**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| WHITE COAT WASTE PROJECT <br><br>                 Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF <br> VETERANS AFFAIRS, <br><br>                 Defendant. |

No. 17-cv-2264 (EGS)

<u>**MEMORANDUM OPINION**</u>

## I.  Introduction

Plaintiff White Coat Waste Project ("WCW"), a non-profit organization that monitors federally-funded animal experiments, brings this Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the United States Department of Veterans Affairs ("VA"), seeking to obtain certain records about canine experiments at the Louis Stokes Cleveland Veterans Affairs Medical Center ("Stokes VAMC") in Ohio. The dog experiments have prompted speculation and resulted in protests. Stokes VAMC eventually released responsive documents, invoking certain FOIA exemptions based on the nature of the animal research and the privacy interests of its principal investigators and other research personnel. Following Stokes VAMC's productions, WCW's administrative appeals of certain withholdings, and the filing of this action, the remaining dispute is quite narrow. WCW

solely seeks the name of the principal investigator on a research protocol for dog experiments at Stokes VAMC.

Pending before the Court are the parties' cross-motions for summary judgment. Upon careful consideration of the parties' submissions, the applicable law, and the entire record herein, the Court concludes that FOIA Exemption 5's deliberative process privilege does not justify withholding the principal investigator's name, and that the Court finds that the VA has failed to provide it with sufficient information to determine whether the principal investigator's name was properly withheld under Exemption 6. Therefore, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Judgment and **GRANTS IN PART, DENIES IN PART,** and **HOLDS IN ABEYANCE** Plaintiff's Cross-Motion for Summary Judgment. The Court **DENIES WITHOUT PREJUDICE** WCW's requests for *in camera* review and the production of the animal research protocol, and **DEFERS** ruling on the issue of whether the agency has "officially acknowledged" the principal investigator's name.

## II.  Background

WCW is a non-profit organization with a mission "to expose and end wasteful taxpayer-funded animal experiments." Def.'s Statement of Material Facts ("Def.'s SOMF"), ECF No. 20-1 at 1 ¶ 1 (quoting Compl., ECF No. 1 at 2 ¶ 4); *see also* Pl.'s Counter-Statement of Material Facts ("Pl.'s SOMF"), ECF No. 21-2 at 1 ¶

1 (same).[1] As part of its investigation into the VA's dog

experiments, WCW submitted a FOIA request to Stokes VAMC on

April 3, 2017, seeking the following records:

> (1) A current census of all dogs actively held
> and used in the Stokes VAMC laboratories
> (including each animal's ID number, breed,
> name, color and distinctive markings, date of
> birth, source, USDA pain category, and
> assigned protocol); (2) Photographs and videos
> of these or other dogs used in Stokes VAMC
> labs (from January 1, 2010 to the present);
> (3) Active [Institutional Animal Care and Use
> Committee]-approved protocols to which these
> dogs are assigned; and (4) Animal welfare
> incident reports association with the
> aforementioned projects (from January 1, 2010
> to the present).[2]

Compl., ECF No. 1 at 2 ¶ 8; *see also* Def.'s SOMF, ECF No. 20-1

at 1-2 ¶ 2. Acknowledging receipt of WCW's request on April 5,

2017, Stokes VAMC responded to WCW on April 17, 2017, claiming

that it did not have responsive records. Decl. of Tomica

Jefferson ("Jefferson Decl."), ECF No. 20-3 at 3 ¶ 7, 4 ¶ 8.

On April 26, 2017, WCW administratively appealed that

---

[1] When citing electronic filings throughout this Opinion, the
Court cites to the ECF page number, not the page number of the
filed document.

[2] WCW asserts—and the VA does not dispute—that "the [Animal
Welfare Act, 7 U.S.C. § 2131, *et seq.*] today requires that every
research facility that uses animals for laboratory experiments
must have an Institutional Animal Care and Use Committee (IACUC)
which evaluates the facility's use and care of animals used in
experiments." Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. &
in Supp. of Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Mem."), ECF
No. 21-1 at 11; *see generally* Def.'s Reply to Pl.'s Opp'n to
Def.'s Mot. for Summ. J. & Opp'n to Pl.'s Cross-Mot. for Summ.
J. ("Def.'s Opp'n"), ECF No. 27 at 1-12.

response. *Id.* at 4 ¶ 9. Stokes VAMC then conducted a

"comprehensive search," Def.'s SOMF, ECF No. 20-1 at 2 ¶ 4,

locating responsive records in a filing cabinet in a research

area, *id.* at 2 ¶ 7. Stokes VAMC found sixty-seven responsive

documents. *Id.* at 2 ¶ 4. Stokes VAMC produced fourteen pages in

part and withheld fifty-two pages in full. *Id.* The VA withheld

the census records under FOIA Exemptions 4, 5, and 6,[3] *id.* at 2 ¶

5, and the IACUC-approved protocols under Exemption 5, *id.* at 2

¶ 6. According to Stokes VAMC, there were no responsive

photographs, videos, and animal welfare reports. *Id.* WCW did not

challenge those categories of documents. Jefferson Decl., ECF

No. 20-3 at 7 ¶ 22.

On September 13, 2017, WCW filed a second administrative

appeal, challenging the withholdings in the census records and

the IACUC-approved protocols. *Id.* at 5 ¶¶ 18-19. Stokes VAMC

stood by all of its initial conclusions, with the exception of a

research protocol and certain census information. *Id.* at 5 ¶ 19.

---

[3] "Congress included nine exemptions permitting agencies to
withhold information from FOIA disclosure." *Judicial Watch, Inc.
v. U.S. Dep't of Treasury*, 796 F. Supp. 2d 13, 23 (D.D.C. 2011)
(citing 5 U.S.C. § 552(b)). Exemption 4 covers "trade secrets
and commercial or financial information obtained from a person
[that is] privileged or confidential." *Id.* § 552(b)(4).
Exemption 5 applies to "inter-agency or intra-agency memorandums
or letters which would not be available by law to a party other
than an agency in litigation with the agency[.]" *Id.* §
552(b)(5). Exemption 6 protects "personnel and medical files and
similar files the disclosure of which would constitute a clearly
unwarranted invasion of personal privacy[.]" *Id.* § 552(b)(6).

Stokes VAMC "continue[d] to withhold the principal investigators' names as well as other research personnel within the protocol and location of building rooms, pursuant to FOIA Exemptions (b)(5) and (b)(6)." *Id.* at 5 ¶ 19(b). Stokes VAMC explained that "[p]rincipal investigators as well as other research personnel have a privacy interest in being protected from annoyance and harassment" pursuant to Exemption 6, *id.* at 6 ¶ 20(a), and the census records and protocol "discuss unadopted opinions of the Principal Investigator and research personnel" pursuant to Exemption 5, *id.* at 7 ¶ 21(a).

On May 1, 2017, WCW submitted a second FOIA request to Stokes VAMC, seeking to obtain the following records:

> (1) Invoices for all dogs purchased or otherwise procured by Stokes VAMC (from January 1, 2016-present); (2) Acquisition and disposition records for all dogs purchased or otherwise procured by Stokes VAMC (from January 1, 2016-present); (3) Complete animal use and veterinary records for all dogs used in Stokes VAMC experiments (from January 1, 2016-present); (4) Active IACUC-approved Stokes VAMC protocol/s for the use of dogs; (5) Animal welfare incident reports associated with the use of dogs at Stokes VAMC (from January 1, 2014-present); (6) All emails and other records associated with the adoption of any dogs from Stokes VAMC (January 1, 2016-present); (7) Inactive IACUC-approved protocol/s for the use of dogs (from January 1, 2015-present); and (8) Photographs and videos of dogs used in Stokes VAMC labs (from January 1, 2010-present).

Compl., ECF No. 1 at 4-5 ¶ 21. On August 3, 2017, Stokes VAMC

released 169 pages of responsive documents, withholding in part
certain information under Exemptions 4, 5, and 6. Jefferson
Decl., ECF No. 20-3 at 8 ¶ 27; *see also* Def.'s SOMF, ECF No. 20-
1 at 3 ¶ 9. Stokes VAMC redacted names under Exemption 6,
withheld the protocols under Exemption 5, and withheld other
information (*i.e.* "company names, addresses, invoice numbers and
the like") under Exemption 4. Def.'s SOMF, ECF No. 20-1 at 3 ¶
10. On September 20, 2017, after litigation had already begun,
the VA's Office of General Counsel received WCW's administrative
appeal regarding the August 3, 2017 production. Jefferson Decl.,
ECF No. 20-3 at 9 ¶ 31. After the VA's Office of General Counsel
issued a remand to Stokes VAMC to process WCW's appeal, Stokes
VAMC eventually released 217 pages of responsive documents on
March 9, 2018. *Id*. at 9 ¶¶ 32, 34. Stokes VAMC partially
withheld the majority of those records under Exemptions 5 and 6,
including the names of principal investigators, and redacted
some "invoice" information under Exemptions 4, 5, and 6. Def.'s
SOMF, ECF No. 20-1 at 3 ¶ 12.

Stokes VAMC also turned over a redacted version of an
animal research protocol, entitled "High Frequency Spinal Cord
Stimulation to Restore Cough." Pl.'s SOMF, ECF No. 21-2 at 8 ¶
49; *see also* Pl.'s Mem., ECF No. 21-1 at 17 (asserting that
"Stokes VAMC's experimenters cut the spinal cord[s] of mongrel
dogs to paralyze them and then attempt to restore a cough in the

paralyzed dogs."). The protocol is a forty-eight-page document, subject to redactions pursuant to Exemptions 5 and 6. Def.'s Ex. A, Jefferson Decl., ECF No. 20-3 at 18 (showing an excerpt of the *Vaugh* index).[4] That redacted document—the protocol at issue— excludes the name of the principal investigator. *See* Pl.'s SOMF, ECF No. 21-2 at 8 ¶¶ 49-50. Over the course of this litigation, the parties have narrowed the scope of the dispute to the protocol at issue. *See* Decl. of Matthew Strugar ("Strugar Decl."), ECF No. 21-4 at 2 ¶ 10. WCW solely challenges the redactions of the principal investigator's name in the protocol in order to hold that person and the VA accountable. *Id.* at 8 ¶ 50; *see also* Pl.'s Mem., ECF No. 21-1 at 35.

Both parties moved for summary judgment. *See, e.g.*, Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 20; Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. ("Def.'s Mem."), ECF No. 20-2 at 1- 19; Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 21 at 1-3.[5] The VA argues that it is entitled to summary judgment for the following five reasons: (1) it conducted adequate searches

---

[4] "A *Vaughn* index describes the documents withheld or redacted and the FOIA exemptions invoked, and explains why each exemption applies." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1145 n.1 (D.C. Cir. 2015) (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987)).

[5] WCW's cross-motion for summary judgment was not accompanied by a proposed order as required by Local Civil Rule 7.1(c). *See* LCvR 7.1(c) ("Each motion and opposition shall be accompanied by a proposed order."); *see generally* Pl.'s Mot., ECF No. 21.

for the responsive records; (2) it properly withheld certain
financial, tax and other information of vendors under Exemption
4; (3) it appropriately withheld census and protocol records
under Exemption 5 because those "records are a deliberative
prelude to a report that the VA typically makes publicly
available[;]" (4) it properly invoked Exemption 6 to protect the
privacy interests of its employees and shield them from
harassment "[g]iven the nature of animal research work and
antipathy towards [that research][;]" and (5) it released all
reasonably segregable, non-exempt information, withholding
exempt information under Exemptions 4, 5, and 6. Def.'s Mem.,
ECF No. 20-2 at 1-2. In moving for summary judgment, WCW argues
that the VA has failed to demonstrate that the name of the
principal investigator on the animal research protocol is exempt
from disclosure. Pl.'s Mot., ECF No. 21 at 1. WCW contends that
the VA waived all claimed exemptions to the principal
investigator's name by previously disclosing it in the public
domain.[6] Pl.'s Mem., ECF No. 21-1 at 22-24. WCW concedes that the
VA has adequately conducted its searches, properly invoked

---

[6] WCW's waiver argument falls under the "official acknowledgment"
doctrine. *See Montgomery v. IRS*, 356 F. Supp. 3d 74, 81-82
(D.D.C. 2019) ("The [plaintiffs] root their first set of
objections in a species of waiver doctrine known as 'official
acknowledgment.' Under that doctrine, an agency may be barred
from asserting . . . a FOIA exemption if doing so would be
irreconcilable with its previous official statements." (citing
*Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007)).

Exemption 4 to the withholdings, and appropriately segregated the non-exempt information from the exempt information. *Id.* at 21-22; *see also* Def.'s Opp'n, ECF No. 27 at 3. The briefing is now complete, and the motions are ripe and ready for the Court's adjudication.

## III. Legal Standard

The "vast majority" of FOIA cases can be resolved on summary judgment. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). A court may grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Likewise, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 658 F. Supp. 2d 217, 224 (D.D.C. 2009) (citation omitted). Under FOIA, "the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester[,]" and summary judgment is appropriate only after "the agency proves that it has fully discharged its [FOIA] obligations . . . ." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citations omitted).

When considering a motion for summary judgment under FOIA,

the court must conduct a *de novo* review of the record. *See*
5 U.S.C. § 552(a)(4)(B). The court may grant summary judgment
based on information provided in an agency's affidavits or
declarations when they are "relatively detailed and non-
conclusory," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200
(D.C. Cir. 1991) (citation omitted), and "not controverted by
either contrary evidence in the record nor by evidence of agency
bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738
(D.C. Cir. 1981). Such affidavits or declarations are "accorded
a presumption of good faith, which cannot be rebutted by 'purely
speculative claims about the existence and discoverability of
other documents.'" *SafeCard Servs.*, 926 F.2d 1197 at 1200
(citation omitted).

## IV.  Analysis

As stated by WCW, "[t]he parties' cross-motions for summary
judgment in this case involve one piece of information: the name
of the principal investigator on a publicly-funded experiment on
dogs at [Stokes VAMC] entitled 'High Frequency Spinal Cord
Stimulation to Restore Cough.'" Pl.'s Reply, ECF No. 29 at 5.
The sole dispute is whether the VA's redactions of the principal
investigator's name on the protocol at issue were justified
under Exemptions 5 and 6.[7] The VA advances four primary arguments

---

[7] WCW does not contest the adequacy of the searches, the
applicability of the withholdings under Exemption 4, and the

for why the redactions were proper. The VA's first argument is
that the non-final research protocols are government agency
records; thus, those records are covered under Exemption 5's
deliberative process privilege. Def.'s Mem., ECF No. 20-2 at 12-
13. Next, the VA argues that the redactions of the names of the
principal investigators and other research personnel were proper
under Exemption 6 to protect them from the possibility of
embarrassment and harassment in conducting the canine research,
which constitutes a substantial privacy interest against any
public interest in the name. *Id.* at 16-17; *see also* Def.'s
Opp'n, ECF No. 27 at 3-8. The VA's next argument is that WCW
will gain access to the principal investigator's name in due

---

segregability determinations. Pl.'s Mem., ECF No. 21-1 at 21-22.
Neither does WCW challenge the redactions to: (1) the principal
investigator's address, telephone number, e-mail address, or any
other personal identifying information; or (2) non-principal
investigator's information. Pl.'s Mem., ECF No. 21-1 at 32. The
Court deems those matters as conceded. *See Lewis v. District of
Columbia*, No. 10-5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2,
2011) (per curiam) ("It is well understood in this Circuit that
when a plaintiff files an opposition to a dispositive motion and
addresses only certain arguments raised by the defendant, a
court may treat arguments that the plaintiff failed to address
as conceded." (citation and internal quotation marks omitted)).
The Court has an independent obligation to determine whether the
government has met its FOIA obligations. *See Sussman v. U.S.
Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). Having
reviewed the VA's declaration and the *Vaughn* indices, *see, e.g.*,
Def.'s Mot., ECF No. 20-2 at 17-18; Jefferson Decl., ECF No. 20-
3 at 2-18, the Court finds that the VA has fulfilled its
obligations with respect to these uncontested matters.
Accordingly, the Court **GRANTS** Defendant's motion for summary
judgment as to the adequacy of the searches, the withholdings
under Exemption 4, and the segregability determinations.

course based on its "practice of releasing the names of
principal investigators along with completed research protocols
in abstract form." Def.'s Opp'n, ECF No. 27 at 8. Finally, the
VA contends that it has not waived any exemptions with respect
to withholding the principal investigator's name because the
research has not been released to the public. *Id.* at 10. And WCW
has failed to meet its "burden of pointing to specific information
in the public domain that duplicates that being withheld" because
"[the VA] has not published or publicly disclosed the exact
protocol that [WCW] would need to be able to meet this Circuit's
strict standard." *Id.*

WCW responds that the protocol was improperly withheld
under Exemption 5 because: (1) information and names in research
protocols constitute factual material that the deliberative
process privilege rarely covers, Pl.'s Mem., ECF No. 21-1 at 26,
and (2) the agency is neither "coming up with the names of its
principal investigators" nor "using the names of investigators
to formulate agency policy," *id.* at 27. WCW contends that the
principal investigator only has a *de minimis* privacy interest in
his or her name. *Id.* at 28-29, 35. Finally, WCW argues that the
VA has waived any claimed exemptions for redacting the principal
investigator's name on the protocol at issue because "the exact
information that WCW seeks through this litigation has already
been published by the VA itself," *id.* at 24, and the National

Institute of Health ("NIH") published the name of the principal investigator on its online database, *id.* at 22.

The Court will address each argument in turn, concluding that the VA improperly withheld the principal investigator's name under Exemption 5, and that the Court lacks sufficient information to determine whether the name was properly withheld under Exemption 6.

### A. The VA Improperly Withheld the Principal Investigator's Name under Exemption 5

"Exemption 5 permits an agency to withhold materials normally privileged from discovery in civil litigation against the agency." *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997). To withhold a document under Exemption 5, the "document must meet two conditions: [1] its source must be a Government agency, and [2] it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Stolt–Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 733 (D.C. Cir. 2008) (citation and internal quotation marks omitted). Exemption 5 encompasses the deliberative process privilege as one of the privileges against discovery, and that privilege protects from disclosure documents that would reveal an agency's deliberations prior to arriving at a particular decision. *Dent v. Exec. Office for U.S. Attorneys*, 926 F. Supp. 2d 257, 267–68 (D.D.C. 2013).

13

To fall within the scope of the deliberative process privilege, withheld materials must be both "predecisional" and "deliberative." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). A communication is predecisional if "it was generated before the adoption of an agency policy" and deliberative if it "reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). "Even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue[.]" *Id.* The deliberative process privilege is to be construed "as narrowly as consistent with efficient Government operation." *United States v. Phillip Morris*, 218 F.R.D. 312, 315 (D.D.C. 2003) (quoting *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 667 (D.C. Cir. 1981)).[8]

According to the VA, the research protocols are

---

[8] The VA argues that the census records are deliberative in nature because those documents discuss "unadopted opinions" of the researchers, Def.'s Mem., ECF No. 20-2 at 14 (quoting Jefferson Decl., ECF No. 20-3 at 7 ¶ 21(a)); *see also* Def.'s Opp'n, ECF No. 27 at 2, 11, and that the census records are predecisional because the researchers gathered facts in those records for draft research purposes, *see* Def.'s Mem., ECF No. 20-2 at 14-15. Since the narrow dispute in this case concerns the redactions of the principal investigator's name in the protocol, the census records are not at issue and the Court need not resolve an undisputed issue. *See, e.g.*, Pl.'s Mem., ECF No. 21-1 at 21-22; Def.'s Opp'n, ECF No. 27 at 2-3; Pl.'s Reply, ECF No. 29 at 9.

predecisional because those documents consist of a complication of factual materials created by the researchers for draft research purposes. *See* Def.'s Mem., ECF No. 20-2 at 15. The VA further argues that the protocols are deliberative in nature because those documents discuss "unadopted opinions" of the principal investigator and research personnel. *Id.* at 14 (quoting Jefferson Decl., ECF No. 20-3 at 7 ¶ 21 (a)). The United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has made clear that "[i]f [the] agency records are indeed deliberative, it is appropriate to apply Exemption 5 to the documents themselves, as well as to the names of their authors." *Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980). It is undisputed that the protocols are agency records. Def.'s Mem., ECF No. 20-2 at 13; *see generally* Pl.'s Mem., ECF No. 21-1. But the protocol at issue has already been produced to WCW, subject to the redactions. Pl.'s Reply, ECF No. 29 at 8. The question remains whether the name itself can be redacted under Exemption 5.[9]

---

[9] The Court will not decide whether the protocol itself is predecisional or deliberative because the parties only dispute the principal investigator's redacted name—the protocol itself is not at issue. *See Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 140 (D.D.C. 2014) (declining to decide whether a memorandum was a predecisional document because the parties only challenged the redacted signature pages in the memorandum). For the same reasons, the Court need not address the issue of whether the protocol qualifies as an agency final decision.

The Court is not persuaded that the principal investigator's name should be shielded under Exemption 5's deliberative process privilege. Neither party disputes that "the selection or organization of facts can be part of an agency's deliberative process and so exempt from FOIA," Def.'s Mem., ECF No. 20-2 at 15 (citing *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011)). But the factual material in this case is the principal investigator's name, and the VA has failed to show how the redacted name assisted the agency with the decision-making process. The VA's reliance on *Ancient Coin Collectors Guild v. United States Department of State*, 641 F.3d 504 (D.C. Cir. 2011), is misplaced. In that case, the D.C. Circuit held that "the legitimacy of withholding does not turn on whether the material is purely factual in nature or whether it is already in the public domain, but rather on whether the selection or organization of facts is part of an agency's deliberative process." *Ancient Coin Collectors Guild*, 641 F.3d at 513. The D.C. Circuit reasoned that the factual summaries in a federal advisory committee's reports regarding import restrictions on cultural artifacts reflected an "exercise of discretion and judgment calls," *id.* at 513, because the factual materials "include[d] lists of events selected to show whether a given type of item ha[d] been pillaged[,]" *id*. at 514. The D.C.

16

Circuit concluded that the factual summaries were covered under Exemption 5 because those documents "were culled by the Committee from the much larger universe of facts presented to it[.]" *Id.* at 513 (citation omitted).

Here, the principal investigator's name neither reflects an "exercise of judgment as to what issues" should bear on the research, *id.*, nor involves the selection of facts as part of the agency's deliberative process, *see id.* WCW does not dispute the VA's assertion that research may fall within the scope of the deliberative process privilege, *see* Def.'s Mem., ECF No. 20-2 at 15, but WCW maintains that a name is not "an opinion (adopted or un-adopted) of any employee," Pl.'s Reply, ECF No. 29 at 17. Indeed, a court has held that the names on a signature page in a memorandum were "indisputably 'factual,'" and the "names of those who signed the memorandum [could not] be described as the 'materials embodying officials' opinions[.]'" *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d at 140 (quoting *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992)). The same is true here. The VA fails to show how the principal investigator's name "implicate[s] any deliberative process that may have gone into the creation of the [protocol] as a whole[.]" *Id.* The VA has not met its burden of demonstrating that the principal investigator's name "bear[s] on the formulation or exercise of

17

agency policy-oriented *judgment*." *Petroleum Info. Corp.*, 976
F.2d at 1435 (emphasis in original). The Court therefore finds
that the principal investigator's name in the protocol is
neither predecisional nor deliberative. Accordingly, the Court
**GRANTS** WCW's cross-motion for summary judgment and **DENIES** the
VA's motion for summary judgment as to the redactions of the
principal investigator's name pursuant to Exemption 5.

### B. The Court Lacks Sufficient Information to Determine Whether the VA Properly Withheld the Principal Investigator's Name Under Exemption 6

The Court next considers whether the VA properly withheld
the principal investigator's name under Exemption 6. Exemption 6
permits withholding of information when two requirements have
been met. *See U.S. Dep't of State v. Wash. Post Co.*, 456 U.S.
595, 598 (1982). The first requirement is that "the information
must be contained in personnel, medical or 'similar' files." *Id.*
The statutory formulation "similar files" is understood broadly
to include any "[g]overnment records on an individual which can
be identified as applying to that individual." *Id.* at 602
(citation and internal quotation marks omitted). Thus, Exemption
6 permits exemption of "not just files, but also bits of
personal information, such as names and addresses, the release
of which would create[ ] a palpable threat to privacy." *Judicial*

*Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (citation and internal quotation marks omitted).

The second requirement is that "the information must be of such a nature that its disclosure would constitute a clearly unwarranted invasion of personal privacy." *See Wash. Post Co.*, 456 U.S. at 598. This requirement demands that a court "weigh the privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of privacy." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (citation and internal quotation marks omitted). The only relevant public interest in this balancing analysis in a FOIA case is "the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Id.* (citation and internal quotation marks omitted).

### 1. The Principal Investigator's Name Is Information Contained in "Similar Files"

The parties agree that the principal investigator's name is information that is not contained within the categories of "personnel" or "medical" files. *See, e.g.*, Def.'s Opp'n, ECF No. 27 at 4 (arguing that the VA properly withheld the information from "similar" files because "even information that is not

19

specifically located in 'personnel files' falls within the protections of Exemption 6."); Pl.'s Mem., ECF No. 21-1 at 29-32. With regard to the "similar files" category, WCW acknowledges that the categorization has a broad meaning. *See* Pl.'s Mem., ECF No. 21-1 at 29. The D.C. Circuit has broadly interpreted "'[s]imilar files' [to] include 'detailed Government records on an individual which can be identified as applying to that individual[,]'" including names and other personal identifying information. *Prison Legal News*, 787 F.3d at 1146–47 (quoting *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1124 (D.C. Cir. 2004)). Nevertheless, WCW contends that "this broad construction is not unbounded" and that the broad application does not encompass "[i]nformation concerning an individual government employee that is 'essentially business,' rather than personal, in nature . . . ." Pl.'s Mem., ECF No. 21-1 at 29. (quoting *Sims v. CIA*, 642 F.2d 562, 574 (D.C. Cir. 1980)).

WCW argues that the protocol at issue is not a record concerning the principal investigator, but "it is a document detailing the experiments the investigator will lead." *Id*. at 30. In response, the VA argues that the test for Exemption 6—that "all information that 'applies to a particular individual' meets the threshold requirement for Exemption 6—applies to the principal investigator in this case. *See* Def.'s Opp'n, ECF No.

27 at 4 (quoting *Wash. Post Co.*, 456 U.S. at 602); *see also Wash. Post Co.*, 456 U.S. at 602 n.4 ("[T]here are undoubtedly many Government files which contain information not personal to any particular individual, the disclosure of which would nonetheless cause embarrassment to certain persons."). The Court agrees.

WCW's suggestion—that the principal investigator's name is not personal in nature—is unavailing. Prior to the Supreme Court's decision in *United States Department of State v. Washington Post Company*, 456 U.S. 595 (1982), the D.C. Circuit in *Sims* held that "Exemption 6 was developed to protect intimate details of personal and family life, not business judgments and relationships. Surely it was not intended to shield matters of such clear public concern as the names of those entering into contracts with the federal government." 642 F.2d at 575. The D.C. Circuit determined that the Central Intelligence Agency ("CIA")'s records, including "names of persons and institutions who conducted scientific and behavioral research under contracts with or funded by the CIA," *id.* at 563, for a project that resulted in the death of individuals were not "similar files" for Exemption 6 purposes, *id.* at 564, 574-75.

More than twenty-five years after *Sims*, the D.C. Circuit in *Judicial Watch, Inc. v. Food & Drug Administration* recognized that the Supreme Court has interpreted Exemption 6 broadly and

21

that broad application "does not 'turn upon the label of the file which contains the damaging information.'" 449 F.3d at 152 (quoting *Wash. Post Co.*, 456 U.S. at 601). Acknowledging that FOIA does not only exempt "just files, but also *bits of personal information*, *such as names* and addresses," *id.* (emphasis added), the D.C. Circuit held that the agency "fairly asserted abortion-related violence as a privacy interest for both the names and addresses of persons and businesses associated with [the controversial drug] mifepristone." *Id.* at 153. In reaching that conclusion, the D.C. Circuit relied on: (1) "supporting affidavits detail[ing] evidence of abortion clinic bombings"; and (2) descriptions of "websites that encourage[d] readers to look for mifepristone's manufacturing locations and then kill or kidnap employees once found." *Id.* The D.C. Circuit concluded that the agency properly withheld the names of the agency personnel and other personal information under Exemption 6 "to protect [those associated with mifepristone] from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Id.* (quoting *Wash. Post Co.*, 456 U.S. at 599).

The Court is persuaded that the principal investigator's name in the protocol falls within the "similar files" category. *See id.; see also Wash. Post. Co.*, 456 U.S. at 602 (holding that passport information satisfied Exemption 6's "similar files"

requirement, and explaining that nondisclosure "should have been sustained upon a showing by the Government that release of the information would constitute a clearly unwarranted invasion of personal privacy."). To be clear, the Court does not find that the VA has presented evidence that WCW is encouraging threatening behavior against the VA and its research personnel as in *Judicial Watch, Inc. v. Food & Drug Administration*, 449 F.3d at 152-53. At the same time, the Court cannot ignore that the VA's dog experiments, including those at Stokes VAMC, have prompted speculation and generated media attention. *See, e.g.*, Pl.'s Mem., ECF No. 21-1 at 12-15; Decl. of Justin Goodman ("Goodman Decl."), ECF No. 21-3 at 4 ¶ 13 (stating that "more than fifty separate news stories detail[] the controversy over the McGuire VAMC's dog experiments."); *id.* at 7 ¶ 14 ("A variety of news outlets have also reported on dog experiments at the Stokes VAMC[.]"). Members of Congress have called for accountability and transparency in government-funded animal experimentation. Pl.'s Mem., ECF No. 21-1 at 13; *see also* Goodman Decl., ECF No. 21-3 at 3 ¶ 12. Furthermore, WCW has publicly criticized the experiments. *See* Pl.'s SOMF, ECF No. 21-2 at 3 ¶ 17. It is undisputed that WCW "asked supporters to call the Richmond VAMC's Public Affairs Officer and express opposition to the facility's painful and deadly dog experiments." *Id.* Finally, media outlets have reported that

activists have participated in organized protests outside of
Stokes VAMC, challenging the dog experiments carried out by the
VA's researchers.[10] While it is true that *Sims* made clear that
Exemption 6 does not apply to business judgments and
relationships, 642 F.2d at 575, the VA characterizes the nature
of the privacy interests at stake here as a concern that the
principal investigator will be subjected to possible harassment
for the controversial dog experiments at Stokes VAMC. Given that
the phrase "similar files" is to be accorded a broad
application, the Court therefore finds that the principal
investigator's name falls within Exemption 6's "similar files"
category.[11]

---

[10] "Taking judicial notice of the *existence* of [news] articles is
entirely proper." *Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d
94, 113 (D.D.C. 2015) (emphasis in original) (citing *Wash. Post
v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991)). The Court
therefore takes judicial notice of the existence of news
articles concerning the protests at Stokes VAMC. *See, e.g.*,
Natasha Anderson & Jennifer Jordan, *Activists Protest Cleveland
VA Medical Center After Hospital Allegedly Received 3 New Dogs
for Testing*, FOX 8 Cleveland News (Apr. 6, 2019, 8:46 PM),
https://fox8.com/2019/04/06/activists-protest-cleveland-va-
medical-center-after-hospital-allegedly-received-3-new-dogs-for-
testing/; Amber Cole, *Protesters Gather at Louis Stokes VA
Medical Center, Ask for the Release of 3 Beagles*, WOIO Cleveland
19 News (Apr. 6, 2019, 2:47 PM),
https://www.cleveland19.com/2019/04/06/protesters-gather-louis-
stokes-va-medical-center-ask-release-beagles/.

[11] WCW's reliance on two decisions in this jurisdiction and an
out-of-Circuit decision—to support its argument that the
principal investigator's name is "essentially business" in
nature—does not alter the Court's conclusion. *See* Pl.'s Mem.,
ECF No. 21-1 at 29 (citing *Aguirre v. SEC*, 551 F. Supp. 2d 33,
54 (D.D.C. 2008); *Leadership Conference on Civil Rights v.*

### 2. The VA Has Failed to Provide Sufficient Information as to Whether the Principal Investigator Has a Substantial Privacy Interest in His or Her Name

Having determined that the principal investigator's name satisfies Exemption 6's "similar files" requirement, this Court "must determine whether the information is of such a nature that its disclosure would constitute a clearly unwarranted privacy invasion." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002). "This, in turn, requires a two-part analysis." *Sai v. Transp. Sec. Admin.*, 315 F. Supp. 3d 218, 259 (D.D.C. 2018). The threshold question is "whether disclosure of the files would compromise a substantial, as opposed to *de minimis*, privacy interest, because if no significant privacy

---

*Gonzales*, 404 F. Supp. 2d 246, 257 (D.D.C. 2005); *Gordon v. FBI*, 390 F. Supp. 2d 897, 902 (N.D. Cal. 2004)). In *Aguirre*, the court found that even if the names of SEC employees referenced in the plaintiff's employment and termination paperwork were considered "similar files," those documents did not implicate the privacy interests of the SEC employees. 551 F. Supp. 2d at 55. In *Gonzales*, the court found that the names and work telephone numbers of paralegals at the Justice Department's Public Integrity Section relating to monitoring federal elections were not similar to "personnel" or "medical" files. 404 F. Supp. 2d at 257. In *Gordon*, a non-binding, out-of-Circuit decision, the court held that the agency's redactions of the names of government officials in an e-mail forwarding a news article about a retired Coast Guard lieutenant commander whose name was similar to a name on the No-Fly list were unjustified. 390 F. Supp. 2d at 902. *Aguirre, Gonzales*, and *Gordon* are readily distinguishable because those cases did not involve government employees developing a controversial abortion drug as in *Judicial Watch, Inc. v. FDA*, 449 F.3d at 153, or conducting controversial dog experiments at federal research facilities.

interest is implicated FOIA demands disclosure." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (citation and internal quotation marks omitted). "Substantial, in this context, means less than it might seem. A substantial privacy interest is anything greater than a *de minimis* privacy interest." *Humane Soc'y of United States v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 43 (D.D.C. 2019) (citation and internal quotation marks omitted). For the reasons explained below, the Court finds that the VA has failed to provide sufficient information to clear this first hurdle.

WCW makes three main arguments why principal investigators have no substantial privacy interests in their names. First, WCW contends that principal investigators are not "government employees who are involved in law enforcement or national security positions." Pl.'s Mem., ECF No. 21-1 at 31. Next, WCW argues that principal investigators do not have substantial privacy interests because their names are listed on government websites, including the VA's own website, as required by 5 C.F.R. § 293.311. *Id.* at 30-35. WCW goes on to argue the VA itself, along with the NIH, published the name of the principal investigator.[12] *Id.* Finally, WCW points to the "[e]videntiary

---

[12] WCW argues that the Stokes VAMC researchers do not have a substantial privacy interest in their names because they have included their names in publicly-available academic journals. *See* Pl.'s Mem., ECF No. 21-1 at 33-35. The VA does not dispute

[f]laws" in two of the VA's declarations, arguing that: (1) the declarations do not show a substantial privacy interest in preventing the disclosure of the name, *id.* at 39; and (2) the majority of the statements in the declarations are inadmissible because they are hearsay, speculative, and not based on the declarants' personal knowledge, *id.* at 39-43; *see also* Pl.'s Reply, ECF No. 29 at 9-10.

Maintaining that there is a substantial privacy interest in the principal investigator's name, the VA heavily relies on its declarations to support its position that disclosure of the principal investigator's name could subject him or her to embarrassment and harassment. Def.'s Opp'n, ECF No. 27 at 5-8. The VA argues that it properly withheld that name because the Supreme Court has "clarified that all information that 'applies to a particular individual' meets the threshold requirement for Exemption 6." *Id.* at 4 (quoting *Wash. Post Co.*, 456 U.S. at 602). The VA contends that it is "necessary" to withhold the name "to protect them from potential attack, harassment, or threatening behavior beyond the incidents that already occurred" where advocacy

---

this assertion. *See* Def.'s Opp'n, ECF No. 27 at 11; *see also* Pl.'s Reply, ECF No. 29 at 14. Accordingly, the Court treats WCW's argument as conceded. *See* LCvR 7(b); *see also Texas v. United States*, 798 F.3d 1108, 1110 (D.C. Cir. 2015) ("[Local Civil Rule 7(b)] is understood to mean that if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded." (citation omitted)).

groups and members of the public targeted individual researchers at other facilities. *Id.* at 7; *see also* Fallon Decl., ECF No. 20-3 at 22-23 ¶¶ 9, 11-12, 15. But the VA does not respond to WCW's evidentiary objections to the statements contained in the two declarations. *See generally* Def.'s Opp'n, ECF No. 27 at 1-12; *see also* Pl.'s Reply, ECF No. 27 at 10. The Court will address, in turn, each of these arguments.

WCW's first argument—that government employees who do not hold law enforcement and national security positions lack substantial privacy interests in their names—is unavailing. *See* Pl.'s Mem., ECF No. 21-1 at 31; *see also* Pl.'s Reply, ECF No. 29 at 13. To support its position, WCW relies on *Walston v. United States Department of Defense*, 238 F. Supp. 3d 57, 67 (D.D.C. 2017) (Sullivan, J.). In *Walston*, this Court found that the agency properly withheld the names and other personal identifying information of low-level government employees who conducted an investigation into the plaintiff's allegations of hacking activity by a government employee because such information satisfied Exemption 6's first requirement and the investigators had a "cognizable privacy interest in keeping their names from being disclosed" because they were employed in a "sensitive agenc[y]" and had "sensitive occupations." *Id.* (quoting *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 192 (2d Cir. 2012)). WCW overstates the holding in *Walston* as carving

out a rule that *all* government employees working in law enforcement and national security automatically have significant privacy interests in *all* circumstances under Exemption 6. Indeed, the D.C. Circuit has explained that Exemption 6 "does not categorically exempt individuals' identities because the privacy interest at stake may vary depending on the context in which it is asserted." *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667, 675 (D.C. Cir. 2016) (citation and internal quotation marks omitted).

While it is true that this Court and others in this jurisdiction have recognized that law enforcement and national security officials have substantial privacy interests in their identities, *see, e.g.*, *Walston*, 238 F. Supp. 3d at 67; *Welenc v. Dep't of Justice*, No. CV 17-0766 (RBW), 2019 WL 2931589, at *8 (D.D.C. July 8, 2019), WCW has failed to cite any D.C. Circuit precedent—and the Court is aware of none—that holds a government employee (*i.e.* a researcher or a principal investigator) cannot have substantial privacy interests in their names outside of the law enforcement context, *see* Pl.'s Mem., ECF No. 21-1 at 31-32. The opposite is true. *See Judicial Watch, Inc. v. FDA*, 449 F.3d at 153 (holding that the agency properly invoked Exemption 6 to withhold names of FDA employees and others who worked on approving a controversial abortion drug).

WCW's other argument—that the principal investigator's name

29

has already been made public because 5 C.F.R. § 293.311 requires disclosure of the principal investigator's name—is equally unavailing. Pl.'s Mem., ECF No. 21-1 at 17, 31–32. Section 293.311 does not support WCW's position. Section 293.311(a) provides that a federal employee's name and position, among other things, is "information" that is generally "available to the public[.]" 5 C.F.R. § 293.311(a). Under that provision, the names of current and former federal employees consist of "information from both the [Office of Personnel Management ("OPF")] and employee performance file system folders, their automated equivalent records, and from other personnel record files that constitute an agency record within the meaning of the FOIA and which are *under the control of the [OPF]* . . . ." *Id.* (emphasis added). WCW, however, fails to demonstrate that the protocol at issue is under the control of OPF. *See id*. Even assuming, *arguendo*, that the protocol at issue is under the control of OPF, WCW ignores subsection (b), which provides that "[t]he [OPF] or agency will generally not disclose information where the data sought is a list of names . . . of Federal employees" that "[w]ould otherwise be protected from mandatory disclosure under an exemption of the FOIA." 5 C.F.R. § 293.311(b). "The relevant regulation accordingly, by its own terms, does not disarm an otherwise available FOIA exemption." *Sai*, 315 F. Supp. 3d at 260 (rejecting the FOIA requester's

argument that the agency's privacy redactions were improper because 5 C.F.R. § 293.311 required disclosure).

The Court next considers whether there is a substantial privacy interest that would justify withholding the principal investigator's name under Exemption 6. The VA argues that it properly invoked Exemption 6 to protect the principal investigator and other researchers from harassment, but the VA's declarations fail to provide any details about the possible harassment of researchers at Stokes VAMC. *See* Def.'s Mem., ECF No. 20-2 at 17; *see also* Def.'s Opp'n, ECF No. 27 at 7. In general terms, one of the VA's three declarants avers that "[p]rincipal investigators as well as other research personnel have a privacy interest in being protected from *annoyance* and *harassment*." Jefferson Decl., ECF No. 20-3 at 6 ¶ 20(a) (emphasis added); *id.* at 8 ¶ 20(b) (stating that the "release of their names . . . may also open these individuals to *potential attack, harassment* or *threatening behavior*." (emphasis added)). The VA submits a declaration from the VA's Chief Veterinary Medical Officer whose office is located in Atlanta, Georgia, and who "oversee[s] the animal research programs at all VA facilities nationally, including [Stokes VAMC]." Fallon Decl., ECF No. 20-3 at 20 ¶ 1. The declarant provides specific examples of threatening incidents at VA medical centers conducting dog experiments in Richmond, Virginia ("Richmond VAMC") and

31

Milwaukee, Wisconsin ("Milwaukee VAMC"). *See id.* at 21-26.
According to the declarant, the Richmond VAMC's operator
received a bomb threat, *id.* at 21 ¶ 4, advocates protested at
the Richmond VAMC, *id.* at 21 ¶ 7, and the Milwaukee VAMC
received verbally abusive telephone calls from individuals
opposed to the canine research there, *id.* at 23 ¶ 15.

The declarant states that "[r]eleasing the names of
individual researchers puts them at increased risk of becoming
targets." *Id.* at 24 ¶ 18. The declarant avers that WCW sought
the name of the principal investigator at the Richmond VAMC in a
separate FOIA lawsuit, and that the NIH inadvertently disclosed
his name. *Id.* at 21-22 ¶ 8; *see also* Pl.'s SOMF, ECF No. 21-2 at
4-5 ¶ 22 ("One of the reports released by NIH in response to
WCW's request showed that Dr. Alex Tan, the principal
investigator on a McGuire VAMC dog experiment, showed 'reckless
behavior' and 'lack of foresight' after cutting open a dog's
lung during a heart surgery."). Shortly thereafter, the
principal investigator at the Richmond VAMC became a target for
his research. Fallon Decl., ECF No. 20-3 at 22 ¶ 9 (stating that
a comment on a website stated "OMG – This 'TAN' is a madman and
needs to be put down himself"). The declarant also states that
an animal rights advocates organized a protest at the homes of
three University of Florida researchers, *id.* at 22 ¶ 11, that
another researcher received a "threatening email," *id.* at 23 ¶

13, and that an animal rights organization targeted a Yale University researcher, *id.* at 23 ¶ 14. Despite these averments, the VA acknowledges that the principal investigator's name will be released to the public. Jefferson Decl., ECF No. 20-3 at 6 ¶ 20(c).

The VA submits a third declaration from the Chair of the Animals in Research and Education Subcommittee of the Federation of American Societies for Experimental Biology ("FASEB"). Kregel Decl., ECF No. 20-3 at 28 ¶ 1. The declarant avers that other researchers have been targeted by animal rights organizations and individuals. *Id.* at 29 at ¶¶ 4-5. The declarant also states that a 2014 FASEB report shows "animal rights extremist groups" in the United States have been involved in approximately "220 incidents involving facility break-ins, thefts of animals, property damage, and harassment" between 1990 to 2012. *Id.* at 28 ¶ 2.

Based on the declarations, the Court is not persuaded that the VA has shown that the "threat to [the principal investigator's] privacy is real rather than speculative." *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 116 (D.D.C. 2005). The VA may be able to show that the principal investigator at Stokes VAMC has a substantial privacy interest in his or her name to avoid any potential threats or harassment. *See, e.g.*, *Dep't of Air Force v. Rose*, 425 U.S. 352,

380 n.19 (1976) ("Exemption 6 [is] directed at threats to
privacy interests more palpable than mere possibilities."); *see
also Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d
873, 875 (D.C. Cir. 1989) ("[T]he privacy interest of an
individual in avoiding the unlimited disclosure of his or her
name and address is significant[.]"); *Am. Farm Bureau Fed'n v.
EPA*, 836 F.3d 963, 971 (8th Cir. 2016) ("The disclosure of names
. . . can implicate substantial privacy interests."). It is
undisputed that WCW maintains a Facebook page with a comments
section, that WCW asked its supporters on Facebook to contact
the VA to express their opposition to dog experiments, and that
WCW disseminated photographs of dogs at a VA research facility.
Pl.'s SOMF, ECF No. 21-2 at 3 ¶¶ 16-17, 7 ¶¶ 42-43; *see also*
Pl.'s Mem., ECF No. 21-1 at 41, 44. It is also uncontested that
the dog experiments at Stokes VAMC have received media
attention. *See* Goodman Decl., ECF No. 21-3 at 7 ¶ 14. But, as
explained below, the declarations do not provide a basis for
justifying the nondisclosure of the principal investigator's
name.

The Court cannot rely on declarations that are "reduced to
speculation and summary accounts of [] hearsay." *Humane Soc'y of
United States*, 386 F. Supp. 3d at 45. As WCW correctly states,
"[a] declaration in support of a motion for summary judgment
'must be made on personal knowledge' and 'set out facts that

34

would be admissible in evidence.'" Pl.'s Mem., ECF No. 21-1 at
39 (quoting Fed. R. Civ. P. 56(c)(4)). "[I]t is 'well-settled
that only admissible evidence may be considered by the trial
court in ruling on a motion for summary judgment.'" *Humane Soc'y
of United States*, 386 F. Supp. 3d at 44 (quoting *Bortell v. Eli
Lilly & Co.*, 406 F. Supp. 2d 1, 11 (D.D.C. 2005)). "And hearsay
evidence generally is inadmissible." *Id.* (citing Fed. R. Evid.
802). "Hearsay is an out-of-court statement that 'a party offers
in evidence to prove the truth of the matter asserted in the
statement.'" *Id.* (quoting Fed. R. Evid. 801(c)).

WCW takes issue with seventeen of the twenty-one paragraphs
contained in the Fallon declaration, and six of the eight
paragraphs contained in the Kregel declaration.[13] *See* Pl.'s Objs.
to Fallon Decl., ECF No. 21-5 at 1-11; *see also* Pl.'s Objs. to
Kregel Decl., ECF No. 21-5 at 11-14. WCW argues that both
declarations "lack[] any indicia of personal knowledge or
reliability on a variety of matters they offer testimony about
and documents they purport to rely on, including email messages
allegedly sent to and received by people entirely unassociated
with the [VA]." Pl.'s Reply, ECF No. 29 at 9; *see also* Pl.'s

---

[13] WCW bases its objections to the Fallon declaration on Federal
Rules of Evidence 401, 403, 602, 701, 802, and 1002. Pl.'s Objs.
to Fallon Decl., ECF No. 21-5 at 1-11. WCW also objects to the
Kregel declaration under Federal Rules of Evidence 403, 602,
701, 802, and 1002. Pl.'s Objs. to Kregel Decl., ECF No. 21-5 at
11-14.

Mem., ECF No. 21-1 at 39-43. WCW objects to the hearsay and speculative statements contained in the challenged declarations.[14] Pl.'s Mem., ECF No. 21-1 at 42-43, 46. The VA does not respond to any of WCW's arguments or objections with respect to the declarations. *See generally* Def.'s Opp'n, ECF No. 27. Defendants have conceded these arguments and objections by not responding to them. *See Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 327 n.13 (D.D.C. 2018) (Sullivan, J.) ("Plaintiffs do not offer any response to this argument, and thus concede it."). The Court agrees with WCW's argument that

---

[14] The Court observes that WCW does not object the following statements contained in the Fallon declaration: (1) the operator at Richmond VAMC initiated the bomb threat protocol and the police evacuated employees from that facility, *see* Pl.'s Objs. to Fallon Decl., ECF No. 21-5 at 1; (2) WCW, along with other organizations, circulated photographs of dogs at Richmond VAMC, *id.*; (3) Richmond VAMC received approximately 2,500 to 3,000 telephone calls of callers expressing opposition to the canine research, *id.* at 2; (4) WCW brought a previous lawsuit seeking certain documents at Richmond VAMC, WCW identified Dr. Alex Tan as the researcher, *id.* at 3, and a comment on a website stated that Dr. Tan "needs to be put down himself," Fallon Decl., ECF No. 20-3 at 22 ¶ 9; (5) "WCW has a record of repeatedly and consistently promoting language that misrepresents the truth, not only creating impressions that directly contradict the facts, but also inspiring outrage in the reader in response to the imagined atrocities[,] *id.* at 24 ¶ 18; (6) WCW offered a reward that "not only discourages the communication with VA that makes it possible for VA to investigate concerns, provide needed animal care, and develop appropriate corrective actions to prevent recurrence of any shortcomings, it incentivizes individuals to disregard conventional mechanisms for solving problems, which creates a culture of acceptance for behaviors that are outside of social norms that constrain attacks on other people[,]" *id.* at 26 ¶ 19.

numerous statements made in the Fallon and Kregel declarations are inadmissible. *See* Pl.'s Reply, ECF No. 29 at 5, 9-10.

In this case, the VA "has established only the speculative potential of a privacy invasion without any degree of likelihood." *Norton*, 309 F.3d at 37. The Court is mindful of the decisions in this jurisdiction that have held that individuals have a substantial privacy interest in their names under certain circumstances. *See, e.g.*, *Am. Ctr. for Law & Justice v. U.S. Dep't of Justice*, 334 F. Supp. 3d 13, 19-20 (D.D.C. 2018) (holding that three FBI special agents who received an e-mail from the Attorney General's Office regarding the scheduling of a conference call about a meeting between the Attorney General and a former president had a substantial privacy interest in their names); *Judicial Watch, Inc. v. U.S. Dep't of State*, 875 F. Supp. 2d 37, 47 (D.D.C. 2012) (finding that "[d]isclosure . . . would likely lead to the publication of [two White House Security staffers'] names and intrusion from media or others seeking information about the [Keystone XL] pipeline and the process"). Other courts, however, have found that declarations based on conclusory statements and second-hand accounts do not justify withholding individuals' names under Exemption 6. *See, e.g.*, *Humane Soc'y of United States*, 386 F. Supp. 3d at 44-47; *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d at 142-143. Indeed, the D.C. Circuit has made clear that the agency

declaration must "give the reviewing court a reasonable basis to evaluate the claim of privilege," *Judicial Watch, Inc. v. FDA*, 449 F.3d at 146 (citation omitted). The VA has failed to carry its burden of demonstrating a substantial privacy interest in the principal investigator's name. Accordingly, the Court **DENIES IN PART** Defendant's motion for summary judgment.

*   *   *

The Court nonetheless finds that the VA has asserted a potential substantial privacy interest. *See, e.g.*, *Elec. Privacy Info. Ctr.*, 384 F. Supp. 2d at 117 (finding that redactions to the names of federal employees were proper under Exemption 6 where "[t]he documents released by the defendants will likely be published on the Internet once released to the plaintiff, and it is likely that readers of the plaintiff's reports, including media reporters as well as private individuals, would seek out the employees mentioned for further information" (footnote omitted)); *Island Film, S.A. v. Dep't of the Treasury*, 869 F. Supp. 2d 123, 136 (D.D.C. 2012) (finding that low-level agency personnel and third parties had "a privacy interest in avoiding the harassment that could ensue following the disclosure of their personal information" due to the risk of "unwarranted public scrutiny or harassing phone calls to elicit sensitive information"). The Court will take the same approach that was taken in *Judicial Watch, Inc. v. Department of the Navy*, 25 F.

38

Supp. 3d at 143-144. In that case, the court found that the agency failed to demonstrate that there was a substantial privacy interest in the names of the signatories of a memorandum. *Id.* at 143. The court, however, permitted the agency to provide additional information "[g]iven that [the agency had] identified a potential substantial privacy interest that might exist in [that] case but ha[d] failed to provide the necessary details for the Court to evaluate that interest[.]" *Id.*

The Court directs the VA to provide additional information in the form of supplemental declarations or affidavits as to the principal investigator's privacy interest in withholding his or her name under Exemption 6. The submissions of declarations or affidavits "will not end the Exemption 6 inquiry. Rather, when 'a substantial privacy interest is at stake,' the court must go on to 'weigh that privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy.'" *Id.* at 144 (quoting *Horner*, 879 F.2d at 874). Accordingly, the Court **HOLDS IN ABEYANCE** Plaintiff's motion for summary judgment as to the Exemption 6 issue.

### 3. **WCW's Requests for *In Camera* Review and the Production of the Protocol**

WCW invokes the "official acknowledgment" doctrine by

arguing that the VA has waived any claimed exemptions to withholding the principal investigator's name. *See* Pl.'s Mem., ECF No. 21-1 at 22-24; *see also* Pl.'s Reply, ECF No. 29 at 6-8. According to WCW, the VA has previously published the principal investigator's name in the public domain. Pl.'s Reply, ECF No. 29 at 5. The VA disagrees, arguing that the agency "has not published or publicly disclosed the exact protocol that [WCW] would need to be able to meet this Circuit's strict standard." Def.'s Opp'n, ECF No. 27 at 10.

The D.C. Circuit has established "[a] three-part test [to] determine[] whether an item is "officially acknowledged": (1) "the information requested must be as specific as the information previously released"; (2) "the information requested must match the information previously disclosed"; and (3) "the information requested must already have been made public through an official and documented disclosure." *Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015) (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990)). "Thus, the fact that information exists in some form in the public domain does not necessarily mean that official disclosure will not cause harm cognizable under a FOIA exemption." *Wolf*, 473 F.3d at 378. "The plaintiff bears the burden of identifying specific information that is already in the public domain due to official disclosure." *Mobley*, 806 F.3d at 583. Here, the specific information is the

principal investigator's name.

WCW argues that the VA focuses on the protocol instead of the requested name. Pl.'s Reply, ECF No. 29 at 8. WCW points out that the VA's Office of Research and Development website has already listed the name of the "PI" (*i.e.*, the principal investigator) for the "High Frequency Spinal Cord Stimulation to Restore Cough." *E.g.*, Pl.'s Mem., ECF No. 21-1 at 19 (showing a still image of the VA's Office of Research & Development website with the protocol at issue as one of the "FY 2018 Funded Projects"); Pl.'s Reply, ECF No. 29 at 7. In response, the VA contends that the research has not been completed or published. Def.'s Opp'n, ECF No. 27 at 10. The VA states that it "will release the names of the researchers in the protocols in dispute once the research has been completed" based on its "practice of releasing all completed research protocols in abstract form on its website, along with the principal investigators' names and research credentials[.]" *Id.* at 11-12.

To determine whether the VA has already publicly released the principal investigator's name, WCW requests that this Court conduct an *in camera* review of the first page of the protocol at issue in the event that the Court finds that there is a substantial privacy interest in the principal investigator's name. Pl.'s Mem., ECF No. 21-1 at 50 (citing *Mehl v. EPA*, 797 F. Supp. 43, 48 (D.D.C. 1992); *Maynard v. CIA*, 986 F.2d 547, 558

(1st Cir. 1993)). WCW also requests that the Court order the production of the unredacted protocol at issue if the Court finds that the principal investigator's privacy interest is not outweighed by the public interest. *Id.* at 49-50.

The Court will not exercise its discretion to review the withheld document. 5 U.S.C. § 552(a)(4)(B); *see also Canning v. United States Dep't of State*, 134 F. Supp. 3d 490, 502 (D.D.C. 2015) ("*In camera* review is a last resort[.]" (citation and internal quotation marks omitted)). Because the Court has directed the VA to provide additional information on the issue of whether there is a substantial privacy interest in the principal investigator's name under Exemption 6, the Court declines to conduct an *in camera* review or order the production of the protocol at issue. *Cf. Am. Immigration Lawyers Ass'n v. U.S. Dep't of Homeland Sec.*, 852 F. Supp. 2d 66, 82 (D.D.C. 2012) ("Because a district court should not undertake *in camera* review of withheld documents as a substitute for requiring an agency's explanation of its claims exemptions in accordance with *Vaughn*, the Court finds that the best approach is to direct defendants to submit revised *Vaughn* submissions." (citations omitted)). Accordingly, the Court **DENIES WITHOUT PREJUDICE** WCW's requests for *in camera* review and the production of the protocol, and **DEFERS** ruling on WCW's wavier argument.

**V.    Conclusion**

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Summary Judgment and **GRANTS IN PART, DENIES IN PART,** and **HOLDS IN ABEYANCE** Plaintiff's Cross-Motion for Summary Judgment. Within thirty days of the issuance of this Memorandum Opinion, the VA shall submit amended declarations or affidavits that provide additional information in order for this Court to evaluate the asserted substantial privacy interest in the principal investigator's name. The Court **DENIES WITHOUT PREJUDICE** WCW's requests for *in camera* review and the production of the animal research protocol, and **DEFERS** ruling on the issue of whether the agency has officially acknowledged the principal investigator's name. A separate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:     Emmet G. Sullivan
            United States District Judge
            August 29, 2019**